**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    DAVID C. GANNON,                           No. C 05-2299 SBA

9              Plaintiff,                        **ORDER**

10     v.                                        [Docket No. 19]

11   JOHN E. POTTER, POSTMASTER
     GENERAL, U.S. POSTAL SERVICE,
12
13            Defendant.
     _____/
14

15         This matter comes before the Court on Defendant John E. Potter's ("Defendant") Motion to

16   Dismiss Plaintiff's Retaliation Claim [Docket No. 19].  Having read and considered the arguments

17   presented by the parties in the papers submitted to the Court, and having considered the arguments

     presented by the parties at the December 13, 2005 hearing, the Court hereby GRANTS Defendant's
18
     Motion to Dismiss Plaintiff's Retaliation Claim.  Plaintiff's retaliation claim is hereby DISMISSED
19
     WITH PREJUDICE.
20
                                     **BACKGROUND**
21
     **A.     Factual Background.**
22
            Plaintiff David C. Gannon ("Plaintiff"), a white male, is an employee of the United States Postal
23
     Service, employed by Defendant John E. Potter ("Defendant"), the Postmaster General of the United
24
     States Postal Service.  First Amended Complaint ("AC") at ¶ 1.  Plaintiff is currently a Clerk at the Elk
25
     Grove Post Office.  *Id.* at ¶ 3.
26
            Plaintiff has worked for the Post Office since June of 1984.  *Id.* at ¶¶ 3, 8.  Up until 1996,
27
     Plaintiff consistently received performance ratings of satisfactory or better, and received various merit
28

1   and performance awards throughout his career.  *Id.* at ¶¶ 3, 8.

2       Beginning on or about 1991, while Plaintiff was working at the West Sacramento Postal Office,

3   Plaintiff and at least four other postal employees – including Ray Bastian ("Bastian"), Keith Komuri

4   ("Komuri"), Wayne Silba ("Silba"), and Wesley Poe ("Poe") – formed an informal "carpool"

5   arrangement with a mentally disabled postal employee, Joe Enos ("Enos").  *Id.* at ¶ 10.  Pursuant to the

6   arrangement, Enos' mother paid Plaintiff, Bastian, Komuri, Silba, and Poe between $5.00 and $7.50 per

7   week to drive Enos to work on a rotating basis.  *Id.*

8       In 1995, Plaintiff was an "EAS Level 16 Supervisor" and was compensated at an annual salary

9   of $65,000.  *Id.* at ¶ 8.  On or around October 1995, Plaintiff engaged in a conversation with Bastian,

10  who was his subordinate, concerning Bastian's restricted sick leave.  *Id.* at ¶ 9.  Plaintiff told Bastian that

11  he would be taking Bastian off of sick leave.  *Id.* at ¶¶ 9, 12.  Bastian agreed.  *Id.*  Gannon then asked

12  Bastian whether Bastian would be willing to transport Enos to and from work.  *Id.* at ¶ 12.  Bastian

13  agreed.  *Id.*

14      The following day, Gannon was told to report to James Taylor ("Taylor"), the boss of his

15  supervisor, Frank Jackson ("Jackson").  *Id.*  Taylor accused Plaintiff of violating postal service rules

16  relating to restricted sick leave.  *Id.*  Specifically, Taylor accused Plaintiff of taking Bastian off of sick

17  leave in exchange for Bastian's agreement to take on Plaintiff's responsibilities relating to Enos.  *Id.* at

18  ¶ 13.

19      On November 10, 1995, Plaintiff attended an investigatory meeting with Taylor.  *Id.* at ¶ 14.

20  When Plaintiff requested that John Garrard ("Garrard"), the National Association of Postal Supervisors

21  representative, attend the meeting, Taylor pounded on his desk and yelled at Plaintiff.  *Id.*  Taylor again

22  accused Plaintiff of coercing Bastian into giving Enos a ride to and from work.  *Id.*  Plaintiff recalls that

23  Taylor did not take any notes during the meeting.  *Id.*  Immediately following the meeting, Jackson, who

24  was Plaintiff's acting supervisor at the time, placed Plaintiff on Administrative Leave.  *Id.*

25      Plaintiff remained on Administrative Leave for the next thirty days.  *Id.* at ¶ 15.  During this

26  time, he stayed at home and had no work or assignments.  *Id.*  Additionally, on November 13, 1995,

28                                              2

**United States District Court**
For the Northern District of California

**United States District Court**

For the Northern District of California

Plaintiff received a Notice of Proposed Removal. *Id.* at ¶ 16. The Notice stated that Plaintiff had "coerced" Bastian into giving Enos a ride to work. *Id.* Plaintiff later observed that the Notice, which was dated November 13, 1995, actually appeared to have been drafted on November 9, 1995. *Id.* at ¶ 17.

On November 22, 1995, Garrad, the National Association of Postal Supervisors representative, drafted a Reply to the Notice of Proposed Removal and sent it to Robert Williamson, the Senior Plant Manager. *Id.* at ¶ 18. In the Reply, Garrad noted that there was no evidence that Plaintiff had coerced Bastian, and that Plaintiff had merely acted out of his own altruistic desire to "provid[e] transportation for an employee who . . suffers from such a severe degree of retardation that he cannot operate a motor vehicle." *Id.* Garrad proposed that the removal action be reduced to a "discussion" and requested that Plaintiff be restored to his former position. *Id.* Garrad also requested a meeting so that he and Plaintiff could "present the full context of th[e] situation." *Id.*

On November 30, 1995, a meeting was held in the West Sacramento office regarding Plaintiff's alleged violation of the sick leave policy. *Id.* at ¶ 19. The meeting was attended by Taylor, Williamson, Plaintiff, and Marilyn Walton. *Id.* Garrad was not invited and did not attend. *Id.* At the meeting, Plaintiff was repeatedly asked why he coerced Bastian into giving Enos a ride to work. *Id.* Plaintiff was also accused of taking up to $45 per day for providing Enos transportation. *Id.* Also at the meeting, Williamson produced a Routing Slip that was purportedly drafted by Plaintiff. *Id.* at ¶ 20. The Routing Slip stated that Plaintiff would "voluntarily return to craft [window clerking instead of supervising]" and that he desired "an assignment in the South Area with a guarantee of 40 hours per week." *Id.* Plaintiff did not actually draft the Routing Slip and believes that it was fabricated by Williamson's secretary. *Id.* Taylor then told Gannon that he had to take the "deal." *Id.* Plaintiff recalls that Taylor also told him: "I will take your home, your car, and your family if you fight this in any way." *Id.*

Either during or after the meeting, Williamson produced another letter, purportedly addressed to Plaintiff from Williamson. *Id.* at ¶ 21. The letter stated that: "Your request for voluntary return to craft has been approved. Mr. James Taylor, Manager, Human Resources, will coordinate your return

United States District Court

For the Northern District of California

date and reporting office." *Id.* Plaintiff believes that Williamson's secretary drafted the letter. *Id.* Plaintiff was subsequently removed from the West Sacramento office, given an inferior window clerk level position (EAS 5) in Elk Grove, and told that he would receive a $20,000 per annum decrease in salary. *Id.*

On December 8, 1995, Plaintiff received a letter from Williamson that stated:

> You are hereby notified that your request to return to craft is hereby rescinded. There was been some more allegations made with respect to an [*sic*] in connection with the Notice of Proposed Removal that you were issued, dated November 13, 1995. You will remain in [administrative leave] status until the investigation is completed.

*Id.* at ¶ 23. Plaintiff was not provided with any information regarding the new allegations. *Id.*

On December 13, 1995, Plaintiff was subjected to another investigation. *Id.* at ¶ 24. The investigation was conducted by Darrel Clark ("Clark"), who had returned to work and had replaced Jackson as the permanent Manager of Distributions. *Id.* Clark asked Plaintiff whether he had ever sent a postal employee to pick up Enos in a postal vehicle. *Id.* Plaintiff stated that he had not. *Id.*

On December 19, 1995, Plaintiff received a letter from Clark. *Id.* at ¶ 26. The letter stated that Clark had discussed Plaintiff's situation with Williamson and that Williamson had agreed to allow Plaintiff to return to craft at the Elk Grove Post Office. *Id.* Plaintiff was told to report to Elk Grove on December 21, 1995. *Id.* Plaintiff, however, told Taylor that he did not wish to return to the Elk Grove Post Office. *Id.* at ¶ 27. Taylor then told Plaintiff that he would put Plaintiff on "AWOL" status for every day that Plaintiff did not return to work and that he would reinstate all of the initial charges of coercion. *Id.* Plaintiff recalls telling Taylor, "I'll see you in court." *Id.* However, Plaintiff returned to work on December 21, 1995 as instructed. *Id.*

In January 1996, Plaintiff filed an informal EEOC Complaint.[1] *Id.* at ¶ 28. In the complaint, Plaintiff alleged that Jackson, a black male, had discriminated against Plaintiff based on his race and gender. *Id.* Plaintiff also alleged that Jackson was known to use racial slurs such as "honkey." *Id.*

---

[1] Plaintiff's formal EEOC Complaint (Case No. 4F-956-1058-96) was filed on April 15, 1996 (this EEOC Complaint is hereinafter referred to as the "April 1996 EEOC Complaint"). *See* Decl. of Owen Martikan at Ex. A.

4

1   Later that month, the EEOC held that the Post Office should have provided Plaintiff with his MSPB

2   rights at the time of his December 19, 1995 demotion.  *Id.* at ¶ 32.

3       In February 1996, Plaintiff's supervisor, Beverly O'Neil ("O'Neil"), told Plaintiff that someone

4   was waiting to meet with him.  *Id.* at ¶ 29.  When Plaintiff arrived in O'Neil's office, he was confronted

5   by Clark, who asked Plaintiff to sign a performance evaluation.  *Id.* at ¶ 30.  The evaluation stated that

6   Plaintiff was being given an "unsatisfactory merit" rating.  *Id.*  The unsatisfactory rating meant that

7   Plaintiff would be denied $1,000 in merit pay.  *Id.*  Plaintiff refused to sign the paperwork.  *Id.*

8       In August 1996, Plaintiff filed a second formal EEOC complaint (Case No. 4F-957-1122-96)

9   alleging race and gender discrimination and retaliation/reprisal (this EEOC Complaint is hereinafter

10  referred to as the "August 1996 EEOC Complaint").  *Id.* at ¶ 31.[2]  The August 1996 EEOC Complaint

11  was premised on Plaintiff's unsatisfactory merit rating.  *Id.*

12       On or about August 28, 1998, Plaintiff settled Case No. 4F-957-1122-96.  *See* December 12,

13  2005 Decl. of Counsel at Ex. 15.

14       In 1998, Plaintiff was promoted from mail clerk to the Supervisor of Distribution and

15  Operations.  AC at ¶ 8.

16       On April 25, 2001, Plaintiff filed a United States Merit Systems Protection Board ("MSPB" or

17  "Board") appeal.  *Id.* at ¶¶ 5, 33.  On December 13, 2001, the MSPB rendered its initial decision

18  dismissing Plaintiff's claims.  *Id.*  Subsequently, Plaintiff filed an appeal with the full Board in

19  Washington, D.C.  *Id.*

20       On January 29, 2003, the Board issued its Final Order dismissing Plaintiff's appeal.  *Id.* at ¶¶ 5,

21  35.  Plaintiff appealed the Final Order to the Federal Circuit.  *Id.*  On November 3, 2003, the Federal

22  Circuit reversed and remanded the case to the MSPB for a hearing on the merits.  *Id.*  At the MSPB

23  hearing, however, Plaintiff claims that he was denied the opportunity to have Bastian and Enos testify

24  on his behalf.  *Id.* at ¶ 37.  Plaintiff also claims that he was denied the opportunity to enter into evidence

25

26  _____

27      [2]The informal EEOC Complaint relating to Case No. 4F-957-1122-96 was filed on June 13,
    1996.  *See* Plaintiff's Response to December 8, 2005 Order at ¶ 9.

28

an affidavit signed by Enos which stated that he and Bastian were friends and that Bastian had been providing Enos with rides from 1992 through 1995. *Id.* The MSPB rendered its decision on March 23, 2004. *Id.*

After receiving the MSPB's decision, Plaintiff filed a second appeal with the full Board in Washington, D.C. *Id.* at ¶¶ 5, 38. On April 29, 2005, the MSPB issued its Final Order dismissing Plaintiff's MSPB complaint. *Id.* Plaintiff received the Final Order on or about May 9, 2005.

On June 6, 2005, Plaintiff filed a complaint against Defendant John E. Potter in this Court. The initial complaint was brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. Although inarticulately pled, the initial complaint appeared to state a claim for discrimination based on gender and retaliation. The initial complaint was premised solely on the April 1996 EEOC Complaint and did not mention the August 1996 EEOC Complaint.

On August 8, 2005 Defendant filed a Motion to Dismiss Plaintiff's Retaliation Claim for Lack of Jurisdiction ("First Motion to Dismiss"). In the First Motion to Dismiss, Defendant argued that Plaintiff's retaliation claim should be dismissed because Plaintiff had failed to exhaust his administrative remedies.

On September 13, 2005, Plaintiff filed a First Amended Complaint. Plaintiff's First Amended Complaint alleges two causes of action: (1) unlawful discrimination based on race; and (2) unlawful discrimination based on retaliation. The First Amended Complaint is premised on both the April 1996 EEOC Complaint and the August 1996 EEOC Complaint.

On September 22, 2005, due to the filing of the First Amended Complaint, the Court dismissed Defendant's First Motion to Dismiss as moot.

On October 4, 2005, Defendant filed its Second Motion to Dismiss Plaintiff's Retaliation Claim for Lack of Jurisdiction and Failure to State Claim ("Second Motion to Dismiss").

## **LEGAL STANDARD**

### A.    **Federal Rule of Civil Procedure 12(b)(6)**

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it

United States District Court

For the Northern District of California

appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of the plaintiff. *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

The court does not accept as true unreasonable inferences or conclusory allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  The Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).  Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)).  Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B.      Rule 12(b)(1)**

7

1      Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for

2  lack of subject matter jurisdiction.  "When subject matter jurisdiction is challenged under Federal Rule

3  of Procedure 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the

4  motion."  *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).  "'A

5  plaintiff suing in a federal court must show in his pleading, affirmatively and distinctly, the existence

6  of whatever is essential to federal jurisdiction, and, if he does not do so, the court, on having the defect

7  called to its attention or on discovering the same, must dismiss the case, unless the defect be corrected

8  by amendment.'"  *Id.* (quoting *Smith v. McCullough*, 270 U.S. 456, 459 (1926)).  In adjudicating such

9  a motion, the court is not limited to the pleadings, and may properly consider extrinsic evidence.  *See*

10  *Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 778 (9th Cir. 2000).

11  **C.**     **Title VII Discrimination**

12      Title VII makes it illegal for an employer "to fail or refuse to hire or to discharge any individual,

13  or otherwise to discriminate against any individual with respect to his compensation, terms, conditions

14  or privileges of employment because of such individual's race, color, religion, sex or national origin[.]"

15  42 U.S.C. § 2000e-2(a)(1).  The statute also prohibits employers from retaliating against an individual

16  because of his or her involvement in an investigation or proceeding concerning employment

17  discrimination.  42 U.S.C. § 2000e-3(a); *Lam v. University of Hawai'i*, 40 F.3d 1551, 1558 (9th Cir.

18  1994).  To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in

19  statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link

20  between the protected activity and the adverse action.  *EEOC v. Dinuba Med. Clinic*, 222 F.3d 580, 586

21  (9th Cir.2000).  Title VII is the "exclusive judicial remedy for claims of discrimination in federal

22  employment."  *Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976).

23                    **ANALYSIS**

24  **A.**     **Defendant's Second Motion to Dismiss**

25      Defendant's Second Motion to Dismiss is aimed solely at Plaintiff's retaliation claim.

26  Specifically, Defendant argues that Plaintiff's retaliation claim must be dismissed because the cause of

27

28                       8

action is moot, since Plaintiff settled his retaliation claim in 1998.  Defendant alternatively argues that, if Plaintiff is asserting a retaliation claim that was not the subject of his August 1996 EEOC Complaint, Plaintiff's retaliation claim must be dismissed because Plaintiff has failed to exhaust his administrative remedies.[3]

**1.     Plaintiff's Retaliation Claim is Moot.**

Defendant first argues that Plaintiff's retaliation claim is moot because Plaintiff settled his claim in 1998.  An EEOC claim that has settled is moot.  *EEOC v. Goodyear Aerospace Corp.*, 813 F.2d 1539, 1542 (9th Cir. 1987).  Since mootness is a jurisdictional issue, *see Ruvalcaba v. City of L.A.*, 167 F.3d 514, 521 (9th Cir. 1999), the Court is not limited to the facts contained in the pleading, and may properly consider pertinent extrinsic evidence.  *See Ass'n of Am. Med. Colleges*, 217 F.3d at 778.

In the December 13, 2005 hearing, Plaintiff admitted that he settled his August 1996 EEOC Complaint with the United States Postal Service on or about August 28, 1998.  Plaintiff also provided the Court with a copy of the EEOC Settlement Agreement.  *See* December 13, 2005 Decl. of Counsel at Ex. 15.  The EEOC Settlement Agreement states, in pertinent part:

> 1.     In exchange for the promises made by the Agency, the United States Postal Service, in paragraph two (2) of this agreement, the Complainant **agrees not to institute a lawsuit under Title VII of the Civil Rights Act of 1964**, the Age Discrimination in Employment Act of 1967, the Rehabilitation Act of 1973, the United States Constitution, **or under any other federal or state law or regulation**; and the Complainant hereby withdraws his formal complaint, dated August 2, 1996, and filed in this the case [*sic*].

---

[3] Defendant also argues that Plaintiff has failed to state a claim for retaliation because "the Postal Service demoted Gannon and lowered his salary rate in November, 1995, *before* Gannon filed his EEOC complaint because he thought that his demotion was discriminatory."  Mot. at 5 (emphasis in original).  Based on the allegations in the First Amended Complaint, this only appears to be partially true.  Namely, Plaintiff admits, in his First Amended Complaint, that he was demoted in 1995, before he ever filed a complaint with the EEOC.  However, Plaintiff also alleges that he received a poor performance review in 1996 – several months after he filed his initial EEOC complaint – and that he was deprived of a $1,000 merit bonus due to this poor performance review.  Thus, the Court declines to dismiss Plaintiff's First Amended Complaint on this basis.

United States District Court
For the Northern District of California

2.　　In exchange for the promises of the Complainant, contained in paragraph one (1) of the agreement, the Agency agrees to the following:

a.　　No reprisal action will be taken against the Complainant.

b.　　To compensate the Complainant with a lump sum in the amount of $1,000.00 with no deductions.

c.　　The 1995 merit will be changed to reflect a rating of Met Objectives/Expectations.  This is a rating change only, no pay adjustment required.

*Id.* (emphasis added).

Upon review of the August 1996 EEOC Complaint, it is clear to the Court that the underlying facts alleged in support of the August 1996 EEOC Complaint are *identical* to those alleged in support of the retaliation claim set forth in the First Amended Complaint.  *Compare* August 1996 EEOC Investigative Affidavit *with* AC at ¶¶ 29-31, 54-55.  It is also clear that Plaintiff settled his retaliation claim and, as part of the settlement, agreed that he would not file a lawsuit premised on the same legal theory and factual events.  As such, the Court finds that the retaliation claim alleged in Plaintiff's First Amended Complaint is moot and hereby GRANTS Defendant's Second Motion to Dismiss.

**2.　　Exhaustion of Administrative Remedies.**

The Court also finds that Defendant has conclusively established that, to the extent Plaintiff is attempting to assert a retaliation claim that is premised on facts that were not included in his August 1996 EEOC Complaint, Plaintiff's claim necessarily fails due to his failure to exhaust his administrative remedies.  Before filing suit in federal court, a federal employee who alleges discrimination or retaliation under Title VII must first exhaust his administrative remedies "by filing a timely charge with the EEOC, . . . thereby affording the agency an opportunity to investigate the charge."  *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1099 (9th Cir. 2002).  This is a jurisdictional requirement.  *Id.*

When an employee seeks judicial relief for an incident not listed in his EEOC charge, the unreported claim must be "like or reasonably related" to the allegations in the EEOC charge in order to be considered exhausted.  *Oubichon v. Northern American Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973); *Shah v. Mt. Zion Hospital*, 642 F.2d 268, 271-272 (9th Cir.1981). Administrative exhaustion

United States District Court
For the Northern District of California

10

United States District Court

For the Northern District of California

extends to all claims of discrimination that fall within the scope of an actual investigation of employment discrimination charge or an investigation that could reasonably be expected to grow out of the charge. *Vasquez v. County of Los Angeles*, 349 F.3d 634 (2003).

In his Opposition brief, Plaintiff contends that he *has* exhausted his administrative remedies with respect to his retaliation claim because, even if the Court determines that he settled the August 1996 EEOC Complaint, his retaliation claim is reasonably related to the factual allegations contained in his April 1996 EEOC Complaint.   In order to support this argument, however, Plaintiff relies on a *completely new* set of "facts" that are *not* alleged in the First Amended Complaint.   Specifically, Plaintiff now alleges that he was retaliated against because he tried to  provide "reasonable accommodations" to Enos and Bastian for their alleged "mental disabilities."   As a threshold matter, the Court is not persuaded that Plaintiff's new retaliation theory is a cognizable legal theory.   More importantly, however, Plaintiff has not stated a retaliation claim on this basis in *this* case.   Nowhere in the First Amended Complaint does Plaintiff even discuss "reasonable accommodations" for Enos or Bastian. Instead, the First Amended Complaint quite plainly states that Plaintiff's retaliation claim is premised solely on his belief that his supervisors retaliated against him because he filed an informal EEOC Complaint in January 1996.   *See* AC at ¶ 55.   Indeed, the exact language used in the First Amended Complaint could not be clearer.   It states:

> Defendant was aware of Plaintiff's participation in the EEO process and opposition to illegal practices, specifically Plaintiff's filing of an EEO complaint for race and sex discrimination in response to Defendant's illegal demotion of Plaintiff.   Plaintiff received an "unsatisfactory merit" evaluation from Darrel Clark and Beverly O'Neil less than two months after Plaintiff filed a formal EEO complaint.   Defendant is aware of the retaliation complaint.

*Id.*

Further, the Court rejects Plaintiff's argument that Rule 8 "notice pleading" does not require him to allege all of the facts and theories supporting his retaliation claim.   Although Plaintiff is correct that the Rule 8 pleading standard applies to his First Amended Complaint, Rule 8 *still* requires him to provide *notice* to the Defendant as to the legal theory he is pursuing.   Additionally, because this Court's jurisdiction is premised on Plaintiff's ability to demonstrate that he has exhausted his administrative

11

1   remedies, Plaintiff's First Amended Complaint must also set forth the facts necessary to make this

2   showing.  *See* Fed. R. Civ. P. 8(a).  Plaintiff has utterly failed to comply with this requirement.  Instead,

3   he has flagrantly thwarted the very purpose of Rule 8 by *twice* filing an insufficient complaint and then

4   changing his legal theory in order to oppose Defendant's motion to dismiss.  Such conduct is not

5   condoned by this Court.

6          Additionally, Plaintiff's attempt to evade dismissal by augmenting the record with his own self-

7   serving declaration is highly improper.  This matter is before the Court on both a 12(b)(6) and a 12(b)(1)

8   motion to dismiss, and therefore the Court is confined to considering the allegations set forth in

9   Plaintiff's First Amended Complaint with the *limited* exception that it may consider certain documents

10  that are necessary to determine whether the Court has subject matter jurisdiction.  *See Schneider v.*

11  *California Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Ass'n of Am. Med. Colleges*,

12  217 F.3d at 778.  The documents that are relevant to establishing subject matter jurisdiction are: (1) the

13  EEOC Complaints and supporting affidavits;(2) the EEOC dispositions, if any; and (3) Plaintiff's 1998

14  settlement agreement with Defendant.  The only documents Plaintiff has submitted that meet this limited

15  exception are: (1) Exhibit 8 to the Declaration of Counsel (the April 1996 EEOC Complaint); (2) Exhibit

16  9 to the Declaration of Counsel (the August 8, 1996 Affidavit signed by Gannon); (3) Exhibit 11 to the

17  Declaration of Counsel (Legislative History of the Federal Service Labor-Management Relations

18  Statute);(4) Exhibit 12 to the Declaration of Counsel (April 7, 1997 Affidavit of David Gannon); Exhibit

19  14 to the December 13, 2005 Declaration of Counsel (October 10, 1996 EEOC Investigative Report);

20  and Exhibit 15 to the December 13, 2005 Declaration of Counsel (August 1998 EEOC Settlement

21  Agreement).  The Declaration of David Gannon, and the remaining exhibits attached to the Declaration

22  of Plaintiff's Counsel, are wholly inappropriate and have therefore been disregarded by the Court.

23         Finally, while the Court may consider these new "facts" in order to determine whether leave to

24  amend should be granted, *see Schneider*, 151 F.3d at 1197 n.1, the Court finds that such leave would

25  not be warranted here.  Upon review of the April 1996 EEOC Complaint and the affidavits that Plaintiff

26  submitted in that case, it is quite apparent that Plaintiff did not pursue any "retaliation due to Plaintiff's

27

28                                              12

efforts to provide reasonable accommodations" theory during the underlying administrative proceedings. To the contrary, Plaintiff repeatedly stated that he was alleging discrimination based on his race and gender only. *See* Decl. of Counsel at Ex. 12 (April 7, 1997 Affidavit of David Gannon) ("The charge in [the Notice of Removal] is easily proved false and **the only reason** Mr. Jackson initiated this action against me is because I am a White male.") (emphasis added).  The Court also finds that Plaintiff's new retaliation theory is not "like or reasonably related to" the discrimination theories at issue in  his April 1996 EEOC Complaint.

Thus, since Plaintiff concedes that the April 1996 EEOC Complaint and the August 1996 EEOC Complaint were the *only* complaints that he filed with the EEOC, the Court finds that Plaintiff has clearly failed to exhaust his administrative remedies with respect to his new retaliation claim. Accordingly, the Court concludes that granting Plaintiff further leave to amend would be futile.

## **CONCLUSION**

IT IS HEREBY ORDERED THAT Defendant's Motion to Dismiss Plaintiff's Retaliation Claim [Docket No. 19] is GRANTED.  Plaintiff's retaliation claim is hereby DISMISSED WITH PREJUDICE. Plaintiff may <u>NOT</u> file another amended complaint without first seeking leave of Court.

IT IS FURTHER ORDERED THAT the parties shall appear for a <u>telephonic</u> Case Management Conference on **<u>Wednesday, January 18, 2006 at 3:45 p.m.</u>**  The parties shall **meet and confer** prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

IT IS SO ORDERED.

Dated: 12/14/05

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge