**United States District Court**
For the Northern District of California

1

2

3

4                          UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6   DAVID C. GANNON,                    )          No. C 05-2299 SBA
                                        )
7              Plaintiff,               )          **ORDER**
                                        )
8       vs.                             )          [Docket Nos. 47, 51]
                                        )
9   JOHN E. POTTER, Postmaster          )
    General, U.S. Postal Service        )
10                                      )
               Defendant.               )
11  _____

12

13

14          This case comes before the Court on Defendant John Potter's Motion for Summary Judgment.

15  For the reasons stated below, the Court GRANTS Defendant's motion.

                                    **BACKGROUND**
16

17          Plaintiff David Gannon, a white male, is a window clerk at a post office in Elk Grove, California.

18  First Amended Complaint (FAC) at ¶3.  Before November, 1995, Gannon was a Manager of

19  Distribution and Operations at the Postal Service's West Sacramento Processing and Distribution

20  Center. *Id*. at ¶¶20-22.  How Gannon became a window clerk after being a supervisor is the subject of

21  this lawsuit.

22          While Gannon was a manager, he supervised an employee named Ray Bastian. FAC at ¶9. On

23  October 16, 1995, Gannon placed Bastian on restricted sick leave, meaning that Bastian could no longer

24  take sick leave without a doctor's note.  Martikan Decl., Exhibit A at 58-59 and Exhibit F.  Two days

25  later, on October 18, 1995, Gannon took Bastian off of restricted sick leave after a conversation in which

26  Gannon told Bastian that he was taking Bastian off of restricted sick leave and then immediately asked

27  Bastian to drive a mentally disabled employee named Joe Enos to work. *Id*. at 82; Exhibit G.  Bastian

28  understood Gannon's statement as proposing a *quid pro quo*: Gannon would take Bastian off of

United States District Court

For the Northern District of California

1  restricted sick leave if Bastian would drive Enos to work. *Id*., Exhibit K at 17. Bastian felt that he was

2  placed in a compromising situation. *Id*. A white male postal employee named Bill Dolan complained

3  to management that Gannon had taken Bastian off of restricted sick leave as a *quid pro quo* for Bastian's

4  agreement to drive Joe Enos to work. *Id*., Exhibit A at 72-73.

5      Dolan's complaint about Gannon was first investigated by James Taylor, who was in Human

6  Resources at the time. *Id*. at 14; Exhibit C at 1. Taylor is also a white male. *Id*., Exhibit B at 2. Taylor

7  prepared a memorandum for Bob Williamson, who was the West Sacramento plant manager at the time,

8  summarizing his investigation. *Id*., Exhibit A at 71 and Exhibit H. In the memo, Taylor noted that

9  Gannon admitted that he had told Bastian that he would take Bastian off of restricted sick leave if

10  Bastian would drive Enos to work, but that Gannon said that he was just "joking." *Id*. at Exhibit H.

11  Taylor concluded that Gannons' behavior was "clearly beyond the bounds of acceptable management

12  practices" and unethical. *Id*. at Exhibit H.

13      Williamson reviewed Taylor's memo and concluded that Taylor's investigation supported the

14  charge that Gannon had misused his authority by trading corrective action against a subordinate in

15  exchange for personal services. Martikan Decl., Exhibit D at 1. Williamson also found that Gannon

16  had falsified employee Joe Enos' time card. *Id*. Williamson forwarded Taylor's memo to Frank

17  Jackson, an African-American man who was Gannon's supervisor at the time, for review and

18  appropriate action. *Id*. at 1-2. Jackson issued Gannon a Notice of Proposed Removal in November,

19  1995. *Id*. at 2. On November 30, 1995, Gannon and his representative at the time – John Garrard – met

20  with Williamson and Taylor to discuss the Notice of Proposed Removal. Martikan Decl., Exhibit A at

21  25; Exhibit D at 2. Marilyn Walton, who was the State Board President of the National Association of

22  Postal Supervisors, also attended the meeting. Martikan Decl., Exhibit E at 10-11. Jackson was not at

23  the meeting. *Id.,* Exhibit A at 27.

24      During the meeting, Taylor offered Gannon the opportunity to return to a "craft" position at the

25  post office of his choice, meaning that Gannon would lose his supervisory position and become a

26  window clerk, to avoid removal. *Id.* at 29-30. Gannon left the room to discuss the offer with Garrard

27  and Walton. *Id*. at 30. When they returned, Gannon accepted the offer. *Id*. at 31. Gannon signed and

28  dated a routing slip stating the following:

2

**United States District Court**

For the Northern District of California

1
2

> I hereby request voluntarily to return to craft.  I desire an assignment in the South Area with a guarantee of 40 hours per week.

3    *Id*. at 92 and Exhibit I.  Gannon returned to work as a window clerk on December 21, 1995.  *Id*. at 96.

4    While the Postal Service was investigating Gannon's misconduct, he was placed on administrative leave

5    with full supervisor's pay.  *Id*. at 94.

6           Gannon challenged his demotion before the Merit Systems Protection Board (MSPB).  FAC at

7    ¶5.  After a hearing on the merits, the MSPB rejected Gannon's claim.  *Id*.  Gannon appealed to the full

8    Board of the MSPB, which also rejected his claim.  *Id*.  Gannon's First Amended Complaint did not

9    challenge the MSPB's ruling on his non-discrimination claim; it only included a Title VII race

10   discrimination claim.  However, during the hearing on the instant summary judgment motion, and in a

11   supplemental brief filed thereafter, Gannon claimed that he was appealing the MSPB's ruling on both

12   his discrimination and non-discrimination claims.  *See* Plaintiff's Supplemental Brief at 4-5.

13          Gannon initially included a retaliation claim in his complaint, but this Court dismissed that claim

14   in a December 14, 2005 Order.

15                                    **LEGAL STANDARD**

16   **A.     Summary Judgment**

17          Under Federal Rule of Civil Procedure 56, a court may properly grant a motion for summary

18   judgment if the pleadings and materials demonstrate that there is "no genuine issue as to any

19   material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v.*

20   *Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is

21   such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

22   *Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment may be granted in favor of a defendant

23   on an ultimate issue of fact where the defendant carries its burden of "pointing out to the district

24   court that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S.

25   at 325; *see Johnston v. IVAC Corp.*, 885 F.2d 1574, 1577 (Fed. Cir. 1989).

26          To withstand a motion for summary judgment, the non-movant must show that there are

27   genuine factual issues which can only be resolved by the trier of fact. *Anderson*, 477 U.S. at 250.

28   The nonmoving party may not rely on the pleadings but must present specific facts creating a

**United States District Court**
For the Northern District of California

1   genuine issue of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626,

2   630 (9th Cir. 1987).  The court's function, however, is not to make credibility determinations.

3   *Anderson*, 477 U.S. at 249.  The inferences to be drawn from the facts must be viewed in a light

4   most favorable to the party opposing the motion.  *T.W. Elec. Serv.*, 809 F.2d at 631.

5       "In evaluating motions for summary judgment in the context of employment discrimination,

6   we have emphasized the importance of zealously guarding an employee's right to a full trial, since

7   discrimination claims are frequently difficult to prove without a full airing of the evidence and an

8   opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d

9   1103, 1112 (9th Cir. 2004).

10  **B.      Title VII**

11      The sole remaining issue in this lawsuit is whether Gannon was discriminated against on the

12  basis of race, in violation of Title VII.  Title VII makes it illegal for an employer "to fail or refuse to

13  hire or to discharge any individual, or otherwise to discriminate against any individual with respect

14  to his compensation, terms, conditions or privileges of employment because of such individual's

15  race, color, religion, sex or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).

16      "Under Title VII, an individual suffers disparate treatment when he or she is singled out and

17  treated less favorably than others similarly situated on account of race." *McGinest v. GTE Service*

18  *Corp.*, 360 F.3d 1103, 1121 (9th Cir. 2004).  "The plaintiff in a disparate treatment case must show

19  the employer's intent to discriminate, but intent may be inferred from circumstantial evidence." *Id*.

20  at 1122.

21      The plaintiff has the burden of establishing a prima facie case of discrimination.  If that is

22  accomplished, "then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory

23  reason for its allegedly discriminatory conduct.  If the defendant provides such a reason, the burden

24  shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination."

25  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir.2003).

26      To establish a prima facie case, the plaintiff "must offer evidence that 'gives rise to an

27  inference of unlawful discrimination,'" either through the framework set forth in *McDonnell Douglas*

28  *Corp. v. Green*, 411 U.S. 792 (1981), or with direct or circumstantial evidence of discriminatory

4

United States District Court
For the Northern District of California

1  intent. *Id*. (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  Under

2  the *McDonnell Douglas* framework, unlawful discrimination is presumed if the plaintiff can show

3  that: (1) he belongs to a protected class; (2) he was performing according to his employer's

4  legitimate expectations; (3) he suffered an adverse employment action; and (4) other employees with

5  qualifications similar to his own were treated more favorably.[3]  Once the defendant produces

6  evidence of a legitimate non-discriminatory reason for its actions, the *McDonnell Douglas*

7  "presumption of discrimination drops out of the picture." *McGinest*, 360 F.3d at 1123 (*quoting*

8  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)).

9  **DISCUSSION**

10  Defendant's first argument in support of his Motion for Summary Judgment is that Plaintiff

11  cannot make out a prima facie case of race discrimination because he never suffered an adverse

12  employment action.  Defendant argues that Gannon voluntarily took a demotion to a lower paid

13  position in exchange for the Post Office's decision not to pursue the Removal Action against him.

14  As the demotion was voluntary, the demotion cannot constitute an "adverse employment action" for

15  the purpose of establishing a prima facie showing of discrimination under the third prong of the

16  *McDonnell Douglas* test.  Plaintiff responds that he suffered an adverse employment action in the

17  form of: (1) a removal; (2) a suspension; (3) a reduction in grade; and (4) a reduction in pay.  The

18  facts demonstrate that Plaintiff in fact received a Notice of Proposed Removal, a Paid

19  Administrative Leave during the pendency of an investigation, and a Demotion.

20  **A.    The Notice of Proposed Removal.**

21  Defendant correctly argues that the Notice of Proposed Removal was only an intermediate

22  step in the removal process and therefore did not constitute an "adverse employment action."

23  Several district courts have held that a Notice of Proposed Removal is not an adverse employment

24  action for purposes of a Title VII claim, because it is not sufficiently final, and because it is subject

25  to modification by an employer following an appeal.  In *Niimi-Montalbo v. White*, 243 F.Supp.2d

26

27  [1]The Court confirmed at the hearing on this Motion for Summary Judgment that Plaintiff is
28  pursuing his claim under the *McDonnell Douglas* framework.  Both parties conceded that the primary issue in this case is whether Defendant suffered an adverse employment action.

**United States District Court**
For the Northern District of California

1109, 1128 (D. Haw. 2003), the district court held that under Ninth Circuit law, a Notice of

Proposed Removal issued to an employee by the Army Corps of Engineers was not an adverse

employment action because the employee's right to appeal the Notice made it insufficiently final.

*Id*.  The district court discussed the Ninth Circuit's decision in *Brooks v. City of San Mateo*, 229

F.3d 917, 930 (9th Cir. 2000), in which the Ninth Circuit held that an employment decision that

could be changed on appeal was not sufficiently final to constitute an adverse employment action.

*Id*. ("Because the [negative performance] evaluation could well have been changed on appeal, it was

not sufficiently final to constitute an adverse employment action.").

The Notice of Proposed Removal that Gannon received in this case, like the Notice of

Proposed Removal in *Niimi-Montalbo* and the job evaluation in *Brooks*, was subject to appeal.

Martikan Decl., Exhibit J at 2.  The Notice says so on its face.  *Id*.  Indeed, Gannon did appeal the

Notice of Proposed Removal to the plant manager, Bob Williamson.  *Id*., Exhibit L.  The facts in this

case are also similar to those addressed by the Ninth Circuit in *Brooks*.  The plaintiff in *Brooks*

received a negative job evaluation, appealed the evaluation, and then abandoned her job while the

appeal was pending.  *Id*.  Here, Gannon received a Notice of Proposed Removal, appealed it to the

plant manager, and then accepted a demotion while the appeal was pending.

Other district courts have held that a Notice of Proposed Removal is not an adverse

employment action.  In *Hardy v. Potter*, 191 F.Supp.2d 873, 883 (E.D. Mich. 2002), a district court

held that a Postal Service Notice of Proposed Removal was not an adverse employment action

because it "was essentially a warning letter to Plaintiff."  *Id*.  And in *Boykin v. England*, 2003 WL

21788953, *5 (D.D.C. 2003), the district court held that a Notice of Proposed Removal was not an

adverse employment action because it "was essentially a precursor to the . . . Decision to Remove."

Thus, the Notice of Proposed Removal was an "interlocutory or mediate decision" that had no effect

on the employment conditions.  *Id*. (quoting *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981) (*en

banc*)).

### B. Paid Administrative Leave.

During the investigation into his misconduct, Gannon was placed on paid administrative

leave.  Martikan Decl., Exhibit A at 94.  Defendant argues that placing Gannon on paid

United States District Court

For the Northern District of California

1   administrative leave during the course of the investigation does not constitute an adverse

2   employment action.  Gannon did not challenge this argument in his Opposition.

3        Persuasive authority supports Defendant's argument.  A district court in this District has held

4   that being placed on paid administrative leave is not an adverse employment action, because it does

5   not deprive a plaintiff of any term, condition or benefit of employment.  *Tomczak v. Safeway, Inc.*,

6   1997 WL 564049, *5 (N.D. Cal. 1997).  Also, the Second Circuit held that placing an employee on

7   paid administrative leave during an investigation is not an adverse employment action.  *Joseph v.*

8   *Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) ("We therefore hold that Joseph's placement on

9   administrative leave pending the criminal charges against him did not constitute an adverse

10  employment action.").

11       As the Second Circuit noted, four other Circuits have reached this result: the Eighth, Sixth,

12  Fifth, and Fourth Circuits.  *Id*. (collecting cases).  The Federal Circuit is also in accord.  *Haddon v.*

13  *Executive Residence at the White House*, 313 F.3d 1352, 1363 (Fed. Cir. 2002).  Accordingly, the

14  Court holds that Gannon suffered no adverse employment action when he was placed on paid

15  administrative leave.

16       **C.      Gannon Voluntarily Requested A Demotion Rather Than Face Removal.**

17       Next, Defendant argues that Gannon's demotion, resulting in the reduction in both pay and

18  grade, was voluntary.  Plaintiff responds that whether Gannon's decision to accept the demotion was

19  voluntary is disputed, but does not provide a factual or legal basis to support this assertion.

20       The Court finds that Gannon's demotion from supervisor to window clerk does not constitute

21  an adverse employment action because he requested the demotion voluntarily in exchange for the

22  Postal Service's rescission of the Notice of Proposed Removal.  Gannon has testified that after

23  receiving the Notice of Proposed Removal, he and his representatives met with Bob Williamson, the

24  plant manager, and James Taylor, from Human Resources, to contest the Notice.  Martikan Decl.,

25  Exhibit A at 25.  During that meeting, Taylor offered to rescind the Notice of Proposed Removal if

26  Gannon would accept a demotion to window clerk at the post office of his choice.  Gannon

27  discussed the offer with his representatives in another room, and decided to accept the offer.  As

28  evidence of his acceptance, Gannon signed and dated a document stating the following:

7

1    I hereby request voluntarily to return to craft. I desire an assignment in the South
2    Area with a guarantee of 40 hours per week.

3    *Id*. at 92 and Exhibit I. Gannon's own representative, John Garrard, testified that Gannon never told

4    him that he felt coerced into signing this document. Martikan Decl., Exhibit M.

5    **D.      The MSPB Correctly Found That Gannon's Demotion Was Voluntary.**

6    During the hearing on the instant motion, Gannon informed the Court that he intended to

7    petition for review of the MSPB's decision on the voluntariness of his demotion, under 5 U.S.C.

8    §7703(b)(2), as well as the MSPB's decision on his race discrimination claim. This position is

9    contrary to Gannon's First Amended Complaint, which does not seek review of the MSPB's decision

10   on Gannon's non-discrimination claim.

11   Gannon brought a "mixed case" before the MSPB, meaning that he raised both a

12   discrimination claim under Title VII, and a non-discrimination claim under the Civil Service Reform

13   Act (CSRA). FAC at ¶7. In the context of his non-discrimination claim under the CSRA, Gannon

14   fully litigated the issue of whether his demotion to a craft position was voluntary before the MSPB.

15   AR000312. The full administrative record of the MSPB proceedings, and the final decision, have

16   been filed with this Court.

17   **1.      Nature of the MSPB's Jurisdiction.**

18   The MSPB is charged with overseeing and protecting the merit system, and adjudicating

19   conflicts between Federal employees and employers. *Sloan v. West*, 140 F.3d 1255, 1259 (9th Cir.

20   1998). The MSPB is authorized to review "adverse employment actions," such as removals,

21   suspensions exceeding 14 days, reductions in grade, reductions in pay, or furloughs for fewer than

22   30 days. 5 U.S.C. § 7512(1)-(5).

23   The MSPB also has jurisdiction over Title VII discrimination claims if they are brought in

24   conjunction with non-discrimination adverse employment action claims. *Sloan*, 140 F.3d at 1259.

25   Cases brought before the MSPB that assert both discrimination and non-discrimination claims are

26   called "mixed cases," and if the MSPB determines that it has jurisdiction over them, they are called

27   "mixed case appeals." *Id*. If the MSPB decides a mixed case appeal against the employee, then the

28   employee may challenge both the discrimination and non-discrimination aspects of the

**United States District Court**
For the Northern District of California

8

**United States District Court**
For the Northern District of California

1   MSPB's opinion in federal district court.  29 C.F.R. § 1614.310(b).

2       Although the district court has jurisdiction to review both the employee's discrimination and

3   non-discrimination claims, the scope of the district court's review varies based on the type of claim

4   before it.  The district court reviews the discrimination claim *de novo*, without any regard to the

5   MSPB's decision.  However, the district court reviews the non-discrimination claim as an appeal of

6   the MSPB's administrative decision, meaning that the district court defers to the MSPB's factual

7   findings and reviews for abuse of discretion.  *Romain v. Shear*, 799 F.2d 1416, 1421 (9th Cir. 1986).

8
                **2.      Standard of Review for the MSPB's Decision on a Non-Discrimination
9                         Claim.**

10      The Ninth Circuit has held that an MSPB decision on a non-discrimination adverse

11  employment action claim is not subject to *de novo* review.  *Romain*, 799 F.2d at 1421.  Rather, in a

12  mixed case, the Court reviews the MSPB's decision on the Army's personnel action under a "more

13  deferential statutory standard" than the discrimination claim.  *Washington v. Garrett*, 10 F.3d 1421,

14  1428 (9th Cir. 1994).  The Court will uphold the MSPB's decision unless it was arbitrary and

15  capricious, an abuse of discretion, or unsupported by substantial evidence.  *Id.*

16      Thus, the MSPB's decision that Gannon failed to state a *prima facie* case that he was subject

17  to an adverse employment action because he could not show that his demotion was not voluntary is

18  subject to review for abuse of discretion.  And Gannon has not shown that the MSPB's factual

19  findings, including its finding that Gannon's testimony was not credible, were arbitrary and

20  capricious.  Notably, the Ninth Circuit has held that an MSPB judge's determination of a witness's

21  credibility is entitled to considerable deference.  *Washington*, 10 F.3d at 1430.

22              **3.      The MSPB Did Not Abuse Its Discretion.**

23      Gannon has failed to show how the MSPB abused its discretion in deciding that Gannon's

24  demotion was voluntary.  The MSPB administrative judge heard testimony, reviewed documentary

25  evidence, and assessed the credibility of witnesses.  The administrative record shows that Gannon

26  had a full and fair opportunity to litigate the issue.  In a lengthy opinion that discusses the testimony

27  in detail, the MSPB administrative judge found that Gannon was not a credible witness (AR000325),

28  that the Postal Service had ample grounds for proposing discipline against Gannon (AR000324), and

9

1    that Gannon could not show that he was subject to duress or coercion when he agreed to accept a

2    demotion in exchange for the rescission of the notice of proposed removal that had been issued to

3    him (AR000328-30).  Because Gannon cannot show that the MSPB abused its discretion in reaching

4    this conclusion, this Court upholds the MSPB's determination that Gannon did not suffer an adverse

5    employment action because his demotion was voluntary.

6    **III.    The Postal Service's Legitimate Basis for Proposed Discipline.**

7           Even if Gannon were able to establish a *prima facie* case of race discrimination, the Postal

8    Service has shown a legitimate non-discriminatory reason for proposing that he be removed.

9           A Postal Service investigation (conducted by a white male employee) uncovered evidence

10   that Gannon had misused his authority by coercing a subordinate to run a personal errand in

11   exchange for his removal from restricted sick leave.  Martikan Decl., Exhibits D and H.  Gannon

12   disputes this, but admits that he took Ray Bastian off of sick leave and also asked him to drive

13   another employee to work during the same "10-second" conversation.  *Id.*, Exhibit A at 82.  Ray

14   Bastian has testified that he understood that a *quid pro quo* was intended.  Martikan Decl., Exhibit K

15   at 17.  Misuse of supervisory authority is a violation of Postal Service regulations that would

16   reasonably subject Gannon to discipline.  *Id.*, Exhibit J at 2.

17   **IV.    Gannon's Evidence of Pretext.**

18          Because the Postal Service has articulated a legitimate, non-discriminatory reason for

19   proposing that Gannon be removed, the burden of proof shifts back to Gannon to show that the

20   Postal Service's stated reason for the discipline was a pretext for discrimination.  *Vasquez*, 349 F.3d

21   at 641.  To meet this burden, Gannon argues that Frank Jackson – the Postal employee who issued

22   Gannon the Notice of Proposed Removal – conducted an insufficient investigation, because he could

23   not remember what happened to his notes from various interviews (that were conducted 11 years

24   ago), and because Jackson had never observed Gannon engage in misconduct.  Gannon's Brief at 15.

25   Gannon also notes that Jackson had issued Notices of Proposed Removal to other Caucasian Postal

26   employees.  *Id*.

27          Gannon's first two arguments – that Jackson could not remember what had happened to his

28   interview notes, and that Jackson did not personally observe Gannon engage in misconduct – do not

10

United States District Court
For the Northern District of California

1    establish pretext.  Indeed, they do not even address the legitimacy of the Postal Service's reason for

2    proposing discipline against Gannon.  The arguments are also irrelevant because James Taylor – like

3    Gannon, a white man – investigated Gannon himself and found reason for discipline.  Martikan

4    Decl., Exhibit C at 1 and Exhibit H.  It was Taylor, not Jackson, who offered Gannon a demotion in

5    exchange for the Postal Service's rescission of the Notice of Proposed Removal.  *Id*., Exhibit A at

6    29-30.  Jackson was not even present at that meeting.  *Id*. at 27.

7           Gannon's third argument – that Jackson had issued Notices of Proposed Removal to other

8    Caucasian employees – misstates Jackson's deposition testimony.  In fact, Jackson testified that he

9    could not remember the races of all of the employees to whom he had issued Notices of Proposed

10   Removal, but that he remembered at least two African-American managers who were demoted from

11   Gannon's facility at around the same time that Gannon accepted his demotion.  Dryovage Decl.,

12   Exhibit 1 at 48:21-49:1; 50:3-19.

13          The Court finds that Gannon has failed to produce evidence that would raise an issue of

14   material fact regarding whether the Postal Service's stated reason for proposing discipline against

15   him was a pretext for race discrimination.

16                                             **CONCLUSION**

17          Gannon has failed to establish a prima facie case of race discrimination, because he cannot

18   show that he suffered an adverse employment action.  He has also failed to raise a disputed question

19   of material fact regarding whether the Postal Service's stated reason for proposing discipline against

20   him was a pretext for race discrimination.

21          Therefore, IT IS HEREBY ORDERED THAT Defendant's Motion for Summary Judgment is

22   GRANTED.  The clerk shall close the file and terminate all pending matters, including the pre-trial

23   conference and trial.

24          IT IS SO ORDERED.

25

26   DATED:11/28/06                          _____

27                                           HON. SAUNDRA B. ARMSTRONG
                                             United States District Judge
28

11